THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEVIN FINK, Defendant-Appellant.

Fourth District   No. 14544

Opinion filed April 17, 1978.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Fink's attitude, as well as his conduct, is criminal.

His unsolicited statement about the rape incident resulting in his jury conviction speaks legion. It is needless for us to print here that obscene and vulgar utterance, although the baseness of his attitude may pale somewhat in the translation. We deem it ample to merely relate that he didn't "know what the big deal" was since all he did was have sexual intercourse with the victim "after I got her high."

Fink does not contest the sufficiency of the evidence to convict. Rather, he alleges the trial court committed reversible error in three separate evidentiary rulings and that the trial court erred in entering judgment on the two counts of rape.

We affirm.

It's undisputed that defendant and the victim met in downtown Hoopeston near midnight on August 20, 1976. Fink's version is that the victim had been seeking to obtain "speed" from him, that they went to defendant's house where the victim took some "speed," that they went out into the backyard where the two had consensual intercourse, and that then they both went their separate ways. He indicated that the cuts he carried were received from a bike fall earlier the same day. Defendant denied possessing or using a knife on the night in question and also denied that a second incident of intercourse occurred.

The victim testified that Fink made sexual advances to her in his apartment, which she rebuffed. Once outside, Fink held a knife to her throat, and after an intense struggle, she was a subdued—but unwilling—partner to an act of intercourse. She also testified that defendant then took her to a field where he again had nonconsensual intercourse with her. After he left, the victim went to a house and sought help. She also denied taking any speed.

An occupant of the house the victim went to for help testified the victim was crying, was very shaky and her hair was messed. A nurse also described the victim as upset with bruises on her face and blood flowing from her mouth. A doctor's pelvic examination showed no evidence of physical trauma.

I. It is first argued that defendant should have been permitted to impeach by corruption the credibility of the victim, because the victim purportedly telephoned the defendant's mother and offered to leave town if paid $1,000. The trial court excluded the testimony since no foundation had been laid for impeachment during cross-examination of the victim. Defendant contends, alternatively, that it was error to require a foundation, that the trial court abused its discretion by not permitting recall of the victim, or that, by defense counsel's error, defendant was denied effective assistance by counsel.

■■ Impeachment by corruption is discussed in *Aneals v. People* (1890), 134 Ill. 401, 25 N.E. 1022. Appellant sought to show by witness Gould's testimony that witness Hunter offered him $50 to testify to certain facts. No foundation had been laid in the examination of Hunter and the impeachment was not permitted; the supreme court held refusal of the impeachment was proper. The witness sought to be impeached must first be offered the opportunity for explanation. (See also 3A Wigmore, Evidence §964 (Chadbourn rev. ed. 1970).) It is well within the discretion of the trial court to grant or deny recall of a witness for further cross-examination. *People v. Ellis* (1976), 41 Ill. App. 3d 377, 354 N.E.2d 369.

■■ Based on *Aneals*, the trial court did not err in requiring foundation for the impeachment by corruption and did not abuse its discretion when

recall was refused. Defense counsel made several attempts to impeach the victim by bringing out minor inconsistencies between trial and pretrial statements during cross-examination. The trial court correctly viewed the attempt to introduce the impeachment by corruption through the mother's testimony as a bypass of the normal impeachment process. The defendant apparently wanted the fact of impeachment before the jury prior to any denial of that fact by the victim. In a psychological sense, the victim would then have to disprove to the jury that she had made an offer to defendant's mother.

No error.

■■ II. On the question of counsel's competency, the trial court observed on the record that defense counsel "is an extremely competent trial lawyer" and that counsel was "probably as good a defense counsel as I have ever had before me." From the record in this case it is readily apparent that the representation given defendant was clearly not so poor as to amount to no representation at all or reduce the proceeding to a farce or mockery. *People v. Elliott* (1977), 46 Ill. App. 3d 887, 361 N.E.2d 852.

No error.

III. Fink next contends he was prohibited from presenting evidence of the reputation of the victim for chastity. However, no error occurred. The rule is stated in *People v. Fryman* (1954), 4 Ill. 2d 224, 122 N.E.2d 573, that the reputation of the victim for chastity is admissible; however, it is her reputation at the *time of the alleged rape* which is admissible and not a subsequently formed reputation. Wigmore gives the reason for the rule as being that after the charge of rape has been made a matter of public discussion, a false reputation is likely to be created and that reputation could be based in part upon rumors about the very act charged or upon interested utterances of either party. Wigmore notes that safeguards of trustworthiness are lacking. 5 Wigmore Evidence §1618 (Chadbourn rev. ed. 1974).

■■ During trial, a friend of defendant was called to testify as to the victim's reputation. The witness testified that before the rape had occurred, the witness heard talk of the victim's reputation and admitted that after the incident, he heard matters that related back to before the incident. When he was asked his opinion as to the victim's reputation, the State objected. The trial court correctly sustained the objection on the ground that such evidence must relate only to reputation before the rape. It should be noted that defendant's brother testified that the victim's reputation for chastity was bad. Defendant was permitted to present all that the rule allows.

No error.

■■ IV. Defendant objects to the lay testimony of a nurse as to blood found on the panties of the victim as being inflammatory. But admission

of lay testimony in this regard is sanctioned by *People v. Preston* (1930), 341 Ill. 407, 173 N.E. 383. The supreme court there held that witnesses at the scene of a crime could testify to the existence of large blood stains where the stains were recent and marked and that testimony regarding smaller quantities could be admitted, with the jury to determine the weight to be accorded the testimony. *People v. Anderson* (1950), 406 Ill. 585, 94 N.E.2d 429, cited by defendant, is distinguishable since the opinion testimony of the doctor in that case improperly invaded the province of the jury. However, in the instant case, there was testimony by a physician that there was no evidence of physical trauma. A question regarding force was presented to the jury. Evidence of blood went to that question and the nurse could properly indicate the presence of blood. In the context of this case, the evidence was not offered solely to inflame the passions of the jury and was properly admitted.

No error.

V. Finally, it is contended that it was improper for the trial court to enter judgment of guilty on two counts of rape since the jury returned only a general verdict. Initially it should be noted that the defense counsel did not object to the verdict forms at the instruction conference and did not tender verdict forms of his own. In *People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601, the supreme court affirmed convictions for rape and kidnaping stating the rule to be well established that where an indictment contains several counts arising out of a single transaction, and a general verdict is returned, the effect is that the defendant is guilty as charged in each count. The supreme court also noted that no objection was made to the forms of verdict used, no form was submitted by defendants, and waiver could result, absent plain error. We agree with the trial judge here that the evidence established one continuous occurrence involving two acts of rape, within close proximity as to both time and place. We find defendant has waived the error and no plain error occurred.

No error.

Affirmed.

REARDON, P. J., and TRAPP, J., concur.