THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES CLIFFORD DORFF, Defendant-Appellant.

Third District    No. 78-296

Opinion filed October 25, 1979.—Rehearing denied December 4, 1979.

A. Randolph Comba, of Potter & Comba, of Princeton, and Louis P. Walter, of Ohio, for appellant.

James E. Hinterlong, State's Attorney, of Ottawa (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On September 10, 1977, defendant was charged by information with rape, aggravated battery and attempt murder. After a jury trial in the Circuit Court of La Salle County, defendant was found guilty of rape and aggravated battery, but was acquitted on the attempt charge. Defendant was sentenced to concurrent terms of 8 to 24 years on the rape conviction and 3 to 9 years on the aggravated battery conviction.

Because of the nature of the issues presented on review, we can omit a detailed account of the facts comprising the crimes charged. The evidence was sufficient to establish that on September 7, 1977, defendant picked up Cindy Steele at a Princeton truck stop and drove her to a secluded rural area where he raped her twice, beat her with his fists, kicked her in the head with his steel-toed shoes and choked her to unconsciousness. Defendant admitted having sex with the victim, but claimed it was with her consent.

Prior to trial the State made a motion in limine to preclude defendant from introducing any evidence of the victim's prior sexual activity or reputation for chastity. The motion was granted based on section 115—7(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 115—7(a)), which provides:

> "In prosecutions for rape or deviate sexual assault, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused."

Section 115—7 was enacted and became effective on January 4, 1978, after the crime in question was alleged to have occurred, but before the trial of the case commenced. Defendant's first contention on appeal is that application of the statute to the instant case violated the *ex post facto* provisions of the United States and Illinois constitutions. We do not agree.

It is clear that prior to enactment of section 115—7, evidence of a rape victim's reputation for chastity was admissible if the defendant raised the defense of consent. (*People v. Allen* (1919), 289 Ill. 218, 124 N.E. 329; *People v. Fink* (1978), 59 Ill. App. 3d 51, 374 N.E.2d 1311.) Section 115—7 changed the law in this regard and prohibited admission of reputation evidence which would have been admissible at the time the rape in this case occurred.

> "It is settled, by decisions of this court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*." (*Beazell v. Ohio* (1925), 269 U.S. 167, 169-70, 70 L. Ed. 216, 217, 46 S. Ct. 68.)

However, not every alteration of the law existing at the time the offense occurred is barred as *ex post facto*.

> "[A]lterations which do not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt, but, leaving untouched the nature of the crime and the amount or degree of proof essential to conviction, only

removes existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offense charged." *Hopt v. Utah* (1884), 110 U.S. 575, 590, 28 L. Ed. 262, 269, 4 S. Ct. 922; *People v. Anderson* (1973), 53 Ill. 2d 437, 292 N.E.2d 364.

By a motion to add authority, defendant has cited two Illinois cases and the statutory construction act (Ill. Rev. Stat. 1977, ch. 131, par. 4), which provides that no new law shall be construed to repeal, or affect in any way, a former law as to any right accrued under the former law, save only that the proceedings after the new law takes effect shall conform to the laws in force at the time of such proceedings. In *People v. Anderson,* one of the cases defendant cited, the supreme court held that the defendant had no "accrued right" to be discharged under the 120-day "speedy trial" statute until after the 120-day period had expired, and therefore the new 160-day limitation period, which took effect while she was waiting trial, was properly applied to deny her discharge. In discussing the constitutional prohibition against *ex post facto* laws, Justice Schaefer, speaking for the court, stated:

"The new provision did not make criminal an act that was innocent when done; it did not increase the punishment for a previously committed offense; and it did not alter the legal rules of evidence in order to convict the defendant. Nor did the new provision deprive the defendant of any substantive right or defense available to her at the time of the offense." (53 Ill. 2d 437, 441, 292 N.E.2d 364, 366.)

The above statement was quoted with approval by this court in *People v. Myers* (1977), 44 Ill. App. 3d 860, 866, 359 N.E.2d 197, 200. Although both *Anderson* and *Myers* imply that an alteration of "the legal rules of evidence in order to convict" cannot be applied retroactively, we construe that phrase to refer to a substantive change in the evidence needed to convict for the particular crime in question. On this point, the Supreme Court of the United States, in *Beazell v. Ohio* stated:

"[I]t is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited." (269 U.S. 167, 170, 70 L. Ed. 216, 218, 46 S. Ct. 68.)

The alteration in rules of evidence in the instant case served only to

prevent use of certain evidence relating to the alleged victim's credibility, and had no bearing upon evidence relating to the crime itself.

In *Thompson v. Missouri* (1898), 171 U.S. 380, 43 L. Ed. 204, 18 S. Ct. 922, the Supreme Court considered a case where, prior to the defendant's trial, the Missouri legislature enacted a statute allowing admission of evidence which would not have been admissible at the time the alleged crime occurred. The court noted the *Hopt* decision and stated:

> "If persons excluded, upon grounds of public policy at the time of the commission of an offense, from testifying as witnesses for or against the accused, may, in virtue of a statute, become competent to testify, we cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offense criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offense. Nor can the new rule introduced by it be characterized as unreasonable—certainly not so unreasonable as materially to affect the substantial rights of one put on trial for crime. The statute did not require 'less proof, in amount or degree,' than was required at the time of the commission of the crime charged upon him. It left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible, and did not disturb the fundamental rule that the state, as a condition of its right to take the life of an accused must overcome the presumption of his innocence and establish his guilt beyond a reasonable doubt." *Thompson*, 171 U.S. 380, 387, 43 L. Ed. 204, 207-08, 18 S. Ct. 922, 924-25.

We have quoted the *Thompson* decision at length because we believe it is directly relevant to the issue at bar. If a statute is not *ex post facto* because it admits evidence which was inadmissible at the time the offense was committed, we cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than render inadmissible evidence which would have been admissible at the time the offense occurred. The "Rape Shield" statute applied in this case did not enlarge the punishment to which the accused was liable when his crime was committed, nor did it make any act involved in the offense criminal that was not criminal at the time the offense was committed. The State was still required to prove beyond a reasonable doubt that the victim did

not consent to the acts of sexual intercourse. The statute left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible.

■■ Based on the reasoning of *Thompson*, we must conclude that application of section 115—7 to the instant case did not violate the *ex post facto* prohibitions of the United States and Illinois constitutions. We note further that courts of other jurisdictions, when confronted with the same *ex post facto* argument in regard to "Rape Shield" statutes, have reached the same result. *Finney v. State* (Ind. App. 1979), 385 N.E.2d 477; *Turly v. State* (Ala. App. 1978), 356 So. 2d 1238.

■■ Defendant next contends that application of section 115—7 to the instant case contravened the general rule of statutory construction, holding that amendatory acts operate prospectively, unless the statutory language clearly indicates the legislature's intent that the statute is to be applied retroactively. Again we must disagree. A firmly established exception to the above-enunciated rule is that amendments which relate only to remedies or forms of procedure are given retrospective application. *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 122 N.E.2d 513; *People v. Myers* (1977), 44 Ill. App. 3d 860, 359 N.E.2d 197.

■■ It is true that procedural amendments will not be applied retrospectively if they infringe or destroy an "accrued right" of the defendant. (*Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 193 N.E.2d 844.) However, we do not believe that defendant, by committing the offense charged, acquired any substantive or accrued right which was infringed by the procedural changes embodied in section 115—7. (See *Myers.*) Section 115—7 merely changed an evidentiary rule relating to rape and deviate sexual assault trials. Defendant has no vested right in a rule of evidence. *People v. Holmes* (1973), 12 Ill. App. 3d 713, 298 N.E.2d 738.

> " 'So far as mere modes of procedure are concerned a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts in existence when its facts arose'." (*Mallett v. North Carolina* (1901), 181 U.S. 589, 596-97, 45 L. Ed. 1015, 1019, 21 S. Ct. 730, 733.)

The trial court did not err in applying section 115—7 to the case at bar.

Finally, defendant claims the trial court erred in precluding defense witness Debbie Knight from testifying to the victim's reputation for truth and veracity. Miss Knight lived in a small town near the victim's home town of Elgin and had hitchhiked with the victim through various parts of

*Illinois* and *Missouri.* Knight testified she had no knowledge of the victim's reputation for truth and veracity in the Elgin area, but the court precluded the witness from expressing an opinion as to the victim's reputation in the mobile community they shared as hitchhikers. The court's ruling was grounded on its belief that testimony as to a witness' reputation for truth and veracity should be based only on the community in which the witness resides. Defendant argues that the rules requiring reputation to be based on the witness' community of residence is antiquated and suggests the rule should be expanded to encompass the realities of modern social situations.

■■ We do not believe the trial court erred. Although a witness may be impeached by testimony showing that the witness has a poor reputation for truth and veracity (*People v. Nash* (1966), 36 Ill. 2d 275, 222 N.E.2d 473), a proper foundation must be laid for such testimony, and a question in proper form must be asked of the reputation witness. *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872.

> "A proper foundation for reputation testimony is presented by showing that the reputation witness has adequate knowledge of the person sought to be impeached, and that evidence of reputation is based upon contact with neighbors and associates of the person, 'rather than upon the personal opinion of the witness.' *People v. Moretti* (1955), 6 Ill. 2d 494, 524, 129 N.E.2d 709." *Brooks*, 63 Ill. App. 3d 328, 342, 379 N.E.2d 872, 883.

■■ ■ In the instant case, no proper foundation was established for Knight's testimony as to the victim's reputation in the hitchhiking community which the two shared. There was no testimony indicating that Knight had ever heard anything from the victim's associates concerning the victim's reputation for truth and veracity. Moreover, the form of the question asked Knight regarding the victim's reputation was improper. (*Brooks.*) Miss Knight was not asked whether she had knowledge of the victim's reputation, but was asked whether she had an opinion as to the victim's reputation. Reputation testimony must be based solely upon what the reputation witness has heard from other people, and is not to be based on the reputation witness' own observations or opinion. (*People v. Flemming* (1977), 47 Ill. App. 3d 755, 362 N.E.2d 691.) Defendant did not lay a proper foundation for the reputation testimony which he sought to introduce, and the trial court, therefore, did not err in excluding that testimony.

The judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

STOUDER, P. J., and ALLOY, J., concur.