UNITED STATES, Appellee

v

EDWARD R. POLAK, Private E–2, and MICHAEL RUBINO, Jr.,
Private E–2, U. S. Army, Appellants

10 USCMA 13, 27 CMR 87

No. 11,478

Decided November 14, 1958

*First Lieutenant William L. Garwood* argued the cause for Appellants,
Accused. With him on the brief was *Captain Arnold I. Melnick.*

*First Lieutenant William H. Keniry* argued the cause for Appellee,
United States. With him on the brief were *Lieutenant Colonel John G.
Lee,* and *Major Thomas J. Nichols.*

GEORGE W. LATIMER, Judge:

These accused were charged with engaging each other in the crime of sodomy, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925. They were jointly tried by general court-martial, convicted and sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for one year. The convening authority approved and the board of review affirmed with one member dissenting on the ground that in his capacity as a fact finder he would not give credence to the testimony of the principal Government witness. The accused appealed and this Court granted their petition for review to consider two issues, namely, the sufficiency of the evidence to sustain the findings as a matter of law and the failure on the part of the law officer to give a specialized instruction on credibility which was not the subject of a request.

We are confronted in the first issue with an attack upon the believability of the Government's key █ witness, who furnished the only direct evidence of the accused's performance of the despicable act in question. That determination was submitted to the court-martial, the convening authority, and the board of review, and their decision is ordinarily conclusive on this Court, although, "A case might conceivably exist in which a key witness, and his or her testimony, could not—as a matter of law—serve as a vehicle for conviction." United States v Washington, 2 USCMA 177, 7 CMR 53.

To support the first assignment of error, the defense attempt to portray the eyewitness as a perjuror, claiming the story he told at trial was riddled with implausibilities, self-contradictions and deliberate lies. Admittedly, the environment in which this crime was committed hampered visual observation, for the *locus delicti* was the bed of one of the accused in a military barracks darkened for the night. The barracks contained sleeping accommodations for approximately eighteen

men sectioned off into cubicles by wooden partitions, about ten feet long and six feet high, which extended outward from the walls. The accused slept in separate cubicles situated to one side and the other of that occupied by the witness. Early in the morning of the night in question, the witness was awakened by the accused's boisterous entrance into the barracks. Eventually the noise subsided, and the witness observed one of the accused dressed in civilian clothes pass in front of his cubicle, apparently on his way to bed. Shortly afterward, however, he observed this same individual making his way back to the scene of the crime clad in underwear. He heard both accused in conversation for a short time and then further audible noises ceased. His suspicions were aroused and, after waiting a few moments, he arose and went to the gathering place of the two accused. There he observed them committing what he described as sodomy and what they characterized as "horseplay." The witness placed the time at 1:30 a.m. or thereabouts but testified that from his vantage point—so close to the foot of the bed that he could touch it—he clearly saw what he described.

The defense point to some eight specific instances in which it is contended the witness falsified. █ Those instances relate generally to the witness's location, his acuity of vision in the darkness, his opportunity to observe, the place of other witnesses, the position of the accused, and the source of the illumination of the cubicle. Without reciting all of the alleged variations, we can categorically state that, collectively, the inconsistencies do not reach a level where it can be said as a matter of law the witness's testimony was inherently incredible or unworthy of belief. For the purpose of this point, we will assume that the witness was impeached on some portions of his testimony, but in each instance he either explained his inconsistencies or was corroborated by other competent testimony. Most of the testimony dealing

with the specific act is assailed because of the assertion it took place in a darkened room and the principal witness made a pretrial statement that light coming from the moon aided his observations. There is considerable testimony and argument about the sources of light but it is sufficient in answer to this argument to say that the one accused who testified was able to see and describe the manner of dress of the key witness, and that another witness observed the physical condition of one accused, and the record otherwise shows the probability of the performance being observed from the position of the key witness. Certainly, if others could see under the conditions then existing, there is no reason for us to conclude he could not. But more to the point, all of the claimed inconsistencies were argued and exploited before both the court-martial and at intermediate appellate levels. They found against the accused, and this Court is concerned solely with evidentiary sufficiency as a matter of law. Article 67 (b), Uniform Code of Military Justice, 10 USC § 867.

It is conceded, as argued by defense counsel, that the Manual for Courts-Martial, United States, 1951, in paragraph 153a states that: "there are cases in which the . . . [fact-finding body] would not be warranted in accepting certain testimony as sufficient to establish the guilt of an accused. For example, a conviction cannot be sustained solely on the self-contradictory testimony of a particular witness, even though motive to commit the offense is shown, if the contradiction is not adequately explained by the witness in his testimony." But this case falls outside the sweep of that rule. Here there is both explanation of the variations and sufficient corroboration of material facts.

Counsel for accused, to support this facet of the appeal, finally assert that this case calls for application of the maxim, "Falsus in uno, falsus in omnibus." That principle is "by the weight of authority . . . not a mandatory rule of evidence, but is rather a permissible inference that the jury may or may not draw." 98 CJS, Witnesses, § 469; see also cases there cited. Here the triers of fact were afforded the opportunity of drawing the inference, but they chose to believe the witness. We, therefore, find against the accused on this asserted error and pass on to consider the second granted issue.

The defense contend that, because this is a sexual case, the law officer should have charged the members of the court on the theory that the accused could not be convicted upon the uncorroborated testimony of a witness if they found his testimony was self-contradictory, uncertain, or improbable. For the purpose of this issue, we will assume the record establishes the propriety of such an instruction had the accused made a request therefor. However, the point is raised for the first time on appeal and, therefore, we must determine the duty of the law officer to instruct *sua sponte*. That officer gave the court-martial members the general instruction that they were the sole judges of the credibility of the witnesses and, under the state of this record, that is sufficient to meet minimal standards. Here, when afforded an opportunity to do so, trial counsel for the accused—civilian and military— failed to ask for a more specific and detailed instruction on that aspect of the case. Moreover, they affirmatively stated they did not desire further instructions and had no objection to those given.

Prior to announcing their satisfaction with the instructions given in open court, trial defense counsel were put on notice by the law officer that he was considering a special instruction on credibility. They failed to pursue the matter, for we find the following colloquy in the record of the out-of-court conference:

"LO: I will just leaf through here (examining book).

"DC: On credibility of witnesses?

"LO: There is one on that.

"DC: Of course, all of the standard instructions would have that.

"LO: Credibility.

"DC: It is part of the general instruction under Article 51c.

"LO: Actually I was thinking of the special one."

Under these circumstances, we need go no further than to apply the rule that "if clarification or elaboration is desired, the burden of requesting such additional instructions rests with the defense counsel." United States v Miller, 8 USCMA 33, 23 CMR 257, and cases therein cited.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.