UNITED STATES, Appellee,

v.

Sergeant Peter R. DESHOTEL, SSN 307–66–3327, United States Army, Appellant.

CM 442203.

U. S. Army Court of Military Review.

1 March 1983.

Colonel William G. Eckhardt, JAGC, Major Robert C. Rhodes, JAGC, and Captain John Lukjanowicz, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Captain Thomas E. Booth, JAGC, and Captain Peter M. Donawick, JAGC, were on the pleadings for appellee.

Before MELNICK, McKAY and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Judge:

This case is before the Court for mandatory review pursuant to Article 66, Uniform Code of Military Justice (10 U.S.C. § 866 (1976)). The appellant, Sergeant Deshotel, was convicted of one specification of sodomy at various times from 26 August 1978 to 18 August 1981, with a child under sixteen years of age, a second specification of sodomy at various times from August 1980 to 18 August 1981, with a second child also under the age of sixteen, two specifications of committing lewd and lascivious acts upon the same two children at various times during the same periods shown above, and one specification of attempted carnal knowledge on 18 August 1981. The convening authority approved only so much of the adjudged sentence as provides for dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances for ten years and reduction to the grade of E–1. The appellant assigns three errors that he contends requires reversal. We find no merit to them and affirm.

The first assignment of error contends that the military judge erred by refusing to give an instruction highlighting alleged contradictory and uncertain testimony of the victims. Because this assigned error is based upon a provision of the Manual for Courts-Martial[1] that has been superceded and case law of impressive authority,[2] we consider discussion of the issue is warranted.

The sordid facts of this case are established mainly from the testimony of the two victims, who are the appellant's stepdaugh-

---

1. Paragraph 153a, Manual for Courts-Martial, United States, 1969 (Revised edition).

2. Cited *infra*.

ters, Yesenia, age 9, and Adonica, age 11. Yesenia testified that on the morning of 18 August 1981, the appellant came home between 0900 and 0930 hours, called her into the kitchen where, at his direction, she engaged in fellatio with him and he fondled her. Afterward, she followed the appellant upstairs where she spent the next two hours cleaning the bathroom. Adonica testified that the appellant came home at 0915 hours, called her downstairs to the living room where, at his direction, she performed fellatio upon him. Afterward, he told her to go upstairs where she again engaged in fellatio and other sexual acts, took off her clothes and got into bed with the appellant who fondled her and attempted to have sexual intercourse with her. She was too small for him to be successful. The sisters did not see each other while the appellant was in the house although their testimony indicates they were each downstairs and, later, in the bathroom at approximately the same time. Their testimony therefore varies in some degree with respect to details. It is, however, for the most part in agreement and consistent.

The next day, following an argument with the appellant over their failure to clean the house, Adonica told Yesenia she was going to run away. Yesenia called their mother, who worked, and told her of Adonica's plans. When the mother came home, the two girls disclosed to her for the first time that the appellant had involved them in sexual activities during the periods alleged in the specifications. The mother called authorities and the present charges resulted. An immediate medical examination disclosed no corroborating evidence except for an area of redness, or erythema, extending from Adonica's introitus into her vaginal cavity. The examining physician testified this erythema could have been caused by a penis or finger.

Both Yesenia and Adonica testified that for approximately two years the appellant had forced them from time to time to perform fellatio and lick his anus. During the same period he had frequently fondled and licked their breasts and vulva areas, and attempted to insert his penis and finger into their vaginas. They testified that the appellant would sometimes do all of these things during the same episode, and, on other occasions, he would only do some of them. They did not tell their mother about these incidents because the appellant threatened to hurt them if they told.

In his testimony, the appellant categorically denied he engaged in the conduct alleged by the two girls and claimed he was a good father and the victim of false charges instigated by his wife.

After both sides rested their cases, the trial defense counsel requested the military judge to give an instruction relating to the corroboration of testimony of the victim of a sexual offense. The defense counsel contended that Yesenia's testimony was uncorroborated and that Adonica's was virtually so. The requested instruction was a standard instruction found on page 9–29, paragraph 9–26, U.S. Department of Army Pamphlet No. 27–9, *Military Judge's Guide,* (19 May 1969), and was based on superceded paragraph 153a, Manual for Courts-Martial, United States, 1969 (Revised edition), that stated in part, "a conviction cannot be based upon uncorroborated testimony given by an alleged victim ... [of] a sexual offense ... if ... the testimony is self-contradictory, uncertain, or improbable". Referring to a draft of a new version of Department of the Army Pamphlet 27–9,[3] the military judge noted that the requested instruction had not been included in the draft because the new military rules of evidence no longer categorized a victim's testimony in "sex cases" as "naturally suspect". He therefore denied the appellant's requested instructions and indicated that he believed the standard instructions on the credibility of witnesses would suffice.[4]

---

3. U.S. Department of Army Pamphlet No. 27–9, *Military Judge's Benchbook* (May 1982).

4. The military judge instructed the members:

You have the duty to determine the believability of the witnesses. In performing this duty, you must consider each witness' intelligence, ability to observe and accurately re-

■ As a general rule, convictions for sexual offenses may be sustained on the basis of the victim's testimony alone in the absence of a statute providing otherwise. 2 Wharton, Criminal Evidence, 13th ed., § 490 (1972). There is, however, considerable authority holding that the uncorroborated testimony of a rape victim is not sufficient where "it is inherently unprobable or incredible". *Id.,* at § 491 and cases cited therein. Paragraph 153*a* of the Manual, *supra,* was undoubtedly based on that proposition, and until the paragraph was superceded appropriate instructions on uncorroborated testimony that was uncertain, self-contradictory or improbable were required to be given to the court members in sexual offense cases when the testimony was in that state. *United States v. Zeigler,* 12 U.S.C.M.A. 604, 31 C.M.R. 190 (1962); *United States v. Polak,* 10 U.S.C.M.A. 13, 27 C.M.R. 87 (1958); paragraph 153*a,* Manual, *supra. Cf. United States v. Payne,* 19 U.S.C.M.A. 188, 41 C.M.R. 188 (1970) (whether victim's testimony in sexual offense case is improbable is question of fact for members and cautionary advice is necessary).

■ In *United States v. Payne, supra,* a case factually similar to this case and in which the evidence was in equipoise, the Court of Military Appeals found it was prejudicial error for "cautionary instructions" to be refused upon defense request. Since the *Payne* case was decided in 1970, however, the President has implemented new rules of evidence for trials by courts-martial.[5] The new rules became effective 1 September 1980 and the Manual change, Change 3, dated 1 September 1980, implementing the new rules, deleted paragraph

153*a.* The *Analysis of the 1980 Amendments of the Manual for Courts-Martial*[6] provides no explanation for this particular change other than that the provision was deleted "as a matter related to Rule 412." Rule 412, Military Rules of Evidence, is taken from Federal Rule of Evidence 412, but is expanded to include all nonconsensual sexual offenses, and is intended to shield victims of sexual assaults, protect human dignity and encourage the reporting and prosecution of sexual offenses. *Id.,* at A18–66. Thus, in changing the Manual for Courts-Martial, the President has guided the military justice system into the modern trend to protect rape victims and victims of other sexual offenses from embarrassment and encourage the reporting of those offenses. This change is within the President's authority to promulgate rules, including rules of evidence governing courts-martial. Article 36, UCMJ, 10 U.S.C. § 836; *United States v. Worley,* 19 U.S.C.M.A. 444, 42 C.M.R. 46 (1970); *United States v. Jenkins,* 7 U.S.C.M.A. 261, 22 C.M.R. 51 (1956). That existing case law is changed by the new rules of evidence does not affect the validity of the change. *United States v. Worley, supra.* Accordingly, we find that the requested instruction was not required as a matter of law and that the case was submitted to the members under the proper standards and guidance. We hold that the military judge did not err in refusing to give the requested instruction.

■ We find no merit to the appellant's assertion of error that Specifications 1 and 2 of Charge I (alleging sodomy) and Specifications 1 and 2 of Charge II (alleging lewd

---

member, in addition to the witness' sincerity and conduct in court, and friendships and prejudices and character for truthfulness. Consider also the extent to which [the] witness is either supported or contradicted by other evidence. The relationships each witness may have with either side. And how each witness might be affected by the verdict. In weighing a discrepancy by a witness or between witnesses, you consider—you should consider whether it concerns important matters or whether it resulted from an innocent mistake or a deliberate lie. Taking all these matters into account, you should

then consider the probability of each witness' testimony and the inclination of the witness to tell the truth. The believability of witness' testimony should be your guide in evaluating testimony and not the number of witnesses called.

5. *See* Executive Order No. 12198 dated 12 March 1980, and Executive Order No. 12233 dated 1 September 1980; Chapter 27, Manual, *supra.*

6. Appendix 18, Manual, *supra.*

and lascivious acts) are multiplicious. The evidence establishes beyond a reasonable doubt that the offenses are not based upon the same incidents and therefore are separate offenses.

 We find no merit to the appellant's remaining assertion that the military judge erred by denying his motion to be released from pretrial confinement.

The findings of guilty and the sentence are affirmed.

Judge LEWIS concurs.

MELNICK, Senior Judge, concurring in the result:

I concur in the result reached by the Court in this case. However, I believe that the Rules of Evidence do not relieve the military judge, upon request, in appropriate circumstances, from responsibility for giving properly tailored instructions which capture the sense of paragraph 153a of the Manual.